**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| HIGHLAND VILLAGE PARENTS GROUP, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:07-cv-548 |
| | § | |
| UNITED STATES FEDERAL HIGHWAY, | § | |
| ADMINISTRATION; JANICE W. BROWN, | § | |
| IN HER OFFICIAL CAPACITY AS | § | |
| DIVISION ADMINISTRATOR OF THE | § | |
| UNITED STATES FEDERAL HIGHWAY | § | |
| ADMINISTRATION, TEXAS DIVISION; | § | |
| J. RICHARD CAPKA IN HIS OFFICIAL | § | |
| CAPACITY AS ADMINISTRATOR OF THE | § | |
| UNITED STATES FEDERAL HIGHWAY | § | |
| ADMINISTRATION; UNITED STATES | § | |
| DEPARTMENT OF TRANSPORTATION; | § | |
| MARY E. PETERS, IN HER OFFICIAL | § | |
| CAPACITY AS SECRETARY OF | § | |
| TRANSPORTATION OF THE UNITED | § | |
| STATES DEPARTMENT OF | § | |
| TRANSPORTATION; TEXAS | § | |
| TRANSPORTATION COMMISSION; AND | § | |
| RIC WILLIAMSON, IN HIS OFFICIAL | § | |
| CAPACITY AS CHAIR OF THE | § | |
| TEXAS TRANSPORTATION | § | |
| COMMISSION, | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION & ORDER GRANTING
FEDERAL DEFENDANTS' MOTION TO DISMISS**

Before the court are the following:

    1.    Federal Defendants' Motion to Dismiss (de # 24);

    2.    State Defendants', Texas Transportation Commission and Ric Williamson, Memorandum in Support of Federal Defendants' Motion to Dismiss (de # 25);

    3.    Plaintiff's Response in Opposition to Federal Defendants' Motion to Dismiss and State Defendants', Texas Transportation Commission and Ric Williamson,

              Memorandum in Support of Federal Defendants' Motion to Dismiss (de # 27);

4.       Reply in Support of Federal Defendants' Motion to Dismiss (de # 30);

5.       Plaintiff's Sur-reply (de # 32); and

6.       State Defendants' Response to Plaintiff's Sur-reply (de # 35).

Highland Village Parents Group, the Plaintiff, brings this lawsuit against the United States Federal Highway Administration, the United States Department of Transportation, the Texas Transportation Commission and four individuals in their official capacities as administrators of those agencies. After a lengthy planning process, the Defendants have approved the construction of a federally-funded 4.7 mile stretch of road in Denton County, Texas. Through the Administrative Procedure Act ("APA"), the Plaintiff challenges the proposed construction project as violative of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303.

The APA provides a private cause of action to those who have suffered harm because of final actions taken by federal agencies. Accordingly, the court is of the opinion that the claims against the State Agency Defendants should be DISMISSED. Because this lawsuit was not filed until after the applicable statute of limitations had run, the court lacks jurisdiction over the subject matter. The court is, therefore, of the opinion that the Defendants' Motion should be GRANTED.

## I. RELEVANT STATUTES

*A. NEPA*

NEPA is a statutory framework that enumerates procedural mechanisms to ensure due attention be given to the impacts on the environment brought about as a result of major federal construction projects. *See* 42 U.S.C. § 4321 (2006). Relevant to this lawsuit, NEPA calls for

thorough agency investigation into those consequences of "major Federal actions" that significantly affect "the quality of the human environment." 42 U.S.C. § 4332(c) (2006).

NEPA does not mandate "particular substantive results." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371 (1989). Rather, the procedures that it and the accompanying regulations mandate "ensure that the agency will not act on incomplete information" with regard to environmental concerns. *Id*; *O'Reilly v. U.S. Army Corps of Engineers*, 477 F.3d 225, 228 (5th Cir. 2007).

Section 4332 requires the relevant agency to prepare an environmental impact statement ("EIS") whenever a proposed project calls for "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(c); 40 C.F.R. 1508.11 (2008) *O'Reilly*, 477 F.3d at 228. To determine whether the preparation of a full-blown EIS is required, the agency conducts an environmental assessment ("EA"). 40 C.F.R. § 1508.9(a)(1) (2008); *La. Crawfish Producers Ass'n-West v. Rowan*, 463 F.3d 352, 356 (5th Cir. 2006). If the EA supports the conclusion that an EIS is unnecessary, the agency is to issue a finding of no significant impact ("FONSI") for public comment. 40 C.F.R. § 1508.13 (2008); *O'Reilly*, 477 F.3d at 228. Whereas an EIS is a thorough, searching document explaining the myriad of environmental impacts a project may create, a FONSI is a concise statement briefly detailing why the project does not signficantly affect the surrounding environment. *La. Crawfish Producers*, 463 F.3d at 356.

NEPA does not provide a private right of action. Instead, challenges to NEPA-mandated decisionmaking are pursued through the APA. *Gulf Restoration Network v. U.S. Dep't of Transp.*, 452 F.3d 362, 367 (5th Cir. 2006); *Sw. Williamson County v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999). The APA allows a federal court to review a "final agency action." 5 U.S.C. § 704 (2006) Under the APA, the agency decision is set aside only if it is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006). While this standard imposes a difficult burden on a plaintiff, NEPA requires the agency to take a "hard look" at a project's environmental effects and to advance detailed findings and explanations including the exploration of alternatives. *Gulf Restoration*, 452 F.3d at 367.

B. *Section 4(f)*

Section 4(f) was formerly codified at 49 U.S.C. § 1653(f), repealed in 1983 and recodified without substantive change in its current place at 49 U.S.C. § 303(c). *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1141 n.16 (5th Cir. 1992). Many of the same policies are also enumerated at 23 U.S.C. § 138. The policies engendered in Section 303(c) are still referred to as Section 4(f) matters. *E.g.*, 23 C.F.R. § 771.107(e) (2008).

Section 4(f) and the accompanying regulations enumerate United States policy favoring the preservation of "the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites." 49 U.S.C. § 303(a) (2006). A transportation project shall not make use of such lands unless the development phase of the project studies alternatives that do not incorporate Section 4(f) lands and determines that no such feasible alternative exists and that the project includes all possible planning to minimize negative effects on Section 4(f) land. 49 U.S.C. § 303(c) (2006).

## II.  BACKGROUND

The Plaintiff has brought this lawsuit against various state and federal agencies, complaining of deficiencies in the approval process regarding a proposed road construction project in Denton County, Texas. The Plaintiff is a nonprofit organization consisting of citizens who live near the proposed roadway. (Pl.'s Orig. Compl. ¶ 15.) The Defendants are a collection of transportation

agencies and their administrators who are responsible for the planning and construction of the project. (*Id*. at ¶¶ 16-22.)

The project at issue is the proposed construction of Farm-to-Market ("FM") road 2499, a 4.7 mile North-South artery that would connect FM 407 and FM 2181 and relieve traffic congestion along nearby North-South routes. (Defs.' Mot. 3.) The need for the project was initially identified in 1983, and after over two decades of planning and modification, construction is ready to begin this year. (Compl. at ¶ 36.) The current design calls for a 140-foot wide road consisting of four lanes of 45 mile-per-hour travel, two sidewalks and a median. (Mot. at 3.)

After years of negotiations, the Federal Highway Administration ("FHWA") and Texas Department of Transportation ("TxDOT") began drafting an EIS in 1988. (Compl. at ¶ 41.) In 1995, those agencies decided to abort the EIS process and began conducting an EA. (*Id*. at ¶ 45.) Draft EA and Section 4(f) statements were submitted for review in 1998. (*Id*. at ¶ 47.) For the better part of the next decade, the draft EA and Section 4(f) statements regarding the chosen design were publicly debated by affected cities, citizens and economic interests. (*Id*. at ¶ 48.) The agencies settled on their chosen design largely on the basis of the support it enjoyed from the nearby towns. (*Id*. at ¶ 64.)

On August 5, 2005, the FHWA adopted the draft statements and, concluding that a more comprehensive EIS was not warranted, issued a formal FONSI. (*Id*. at ¶ 53.) A notice announcing the FONSI, describing the project, providing contact information and calling for public commentary was published in the Federal Register on July 31, 2006. Notice of Final Federal Actions on Proposed Highways in Texas, 71 Fed. Reg. 43,274 (July 31, 2006). On June 5, 2007, TxDOT submitted to the FHWA a reevaluation of the project addressing the continuing validity of the 2005 FONSI.

(Compl. at ¶ 80.) The reevaluation examined new information but concluded that revisiting the FONSI was unnecessary. The FHWA approved the reevaluation on October 8, 2007. (*Id*. at ¶ 81.)

On December 10, 2007, the Plaintiff filed this lawsuit, alleging four causes of action. Counts One and Two allege violations of NEPA based on the agencies' failure properly to assess air pollution and noise pollution, respectively, that would be created by traffic on the completed FM 2499. Count Three alleges that the agencies abandoned alternatives that would have had less a significant impact on Section 4(f) land. Count Four alleges that the decision, under NEPA, to issue a FONSI in lieu of an EIS was arbitrary and capricious. The Defendants seek dismissal of the lawsuit because they contend the court lacks subject matter jurisdiction, and the Plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(1), (6).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

"The principal of sovereign immunity protects the federal government from suit except insofar as that immunity is waived." *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002) (quoting *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998)). Thus, the scope of consent of the United States to subject itself to suit strictly governs the jurisdiction of the court to entertain such a lawsuit. *Id*. Because the length of exposure to such liability is one of the confines of that consent, a statute of limitations in the sovereign immunity context is a jurisdictional consideration. *Ramming v. United States*, 281 F.3d 158, 165 (5th Cir. 2001). The court may not expand its jurisdiction beyond the limits imposed by Congress. *Id*.

## IV. DISCUSSION & ANALYSIS

A decision on this Motion requires the analysis of two chief issues: 1) which statute of limitations to apply and, if any of the Plaintiff's claims are time-barred, 2) whether the October 2007 reevaluation reopens the agencies' actions to judicial scrutiny of the otherwise barred claims. The court finds that the 180-day statute of limitations found in 23 U.S.C. § 139(l) applies to the Plaintiff's claims and that the reevaluation does not revive the Plaintiff's claims.

The court begins, however, by noting that the APA does not provide a cause of action for the Plaintiff against the state agency defendants. The APA acts as a waiver of sovereign immunity for lawsuits directed at agency decisionmaking where "an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702 (2006). By its very terms, the APA applies only to federal agencies, and it does not provide a judicial forum for complaints against state agencies. 5 U.S.C. § 701(b) (2006); *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1055 (5th Cir. 1993). Therefore, the court is of the opinion that the claims against Texas Department of Transportation, and Ric Williamson,

in his official capacity, should be DISMISSED.

*A.     Choosing the Appropriate Statute of Limitations*

On August 10, 2005, President Bush signed into law the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, among the provisions of which was a statute of limitations for claims "arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway..." Pub. L. No. 109-59, 119 Stat. 1865 § 6002(l), (codified at 23 U.S.C. § 139(l) (2006)). The statute provides that such claims are barred unless they are "filed within 180 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final pursuant to the law under which the agency action is taken." 23 U.S.C. § 139(l)(1).

The Defendants argue that the applicable statute of limitations is that contained in 23 U.S.C. § 139(l). The Plaintiff argues that the six-year limitations period contained in 28 U.S.C. § 2401 applies to its claims because the FONSI was issued on August 5, 2005, before the current statute was enacted. Indeed, limitations on APA actions are generally governed by Section 2401 which covers "civil action[s] commenced against the United States." 28 U.S.C. § 2401 (2006); *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997).

The Fifth Circuit was confronted with a similar issue where an intervening statute of limitations clouded the picture as to the claimant's timeliness in *St. Louis v. Texas Worker's Comp. Comm'n*. 65 F.3d 43 (5th Cir. 1995). The plaintiff in that case had filed a claim under the Age Discrimination in Employment Act. *Id*. at 44. The plaintiff was fired on an allegedly discriminatory basis in early 1991. *Id*. Later that year, Congress shortened the applicable statute of limitations from two years from the date of discrimination to 90 days from the date of receipt of a right-to-sue letter.

*Id*. After filing a complaint with the EEOC, the plaintiff received a right-to-sue letter advising him of the change in the law and urging him to take swift action. *Id*. The plaintiff nevertheless waited nearly 300 days to file his lawsuit, putting him within the former, longer limitations period but outside of the shorter time established by the intervening statute. *Id*.

The court concluded that the statute of limitations in place at the time the plaintiff filed his complaint governed the limitations issue. *Id*. at 45. The court determined that, although the plaintiff was prevented from pursuing a claim based on conduct before the statute was enacted, it did not have a "genuinely 'retroactive' effect." *Id*. at 46. The intervening statute governed the "secondary conduct of filing suit" rather than the primary conduct of the defendants. *Id*. The statute also did not alter either party's liability or impose new duties. *Id*. Thus, the issue was not one of retroactivity, but one of the type of conduct governed by the statute; the defendant's primary conduct or the plaintiff's secondary conduct of filing suit. *Id*.

The Fifth Circuit elaborated on this issue a few years later in *United States v. Flores*. 135 F.3d 1000 (5th Cir. 1998). The court first noted that "normal rules of statutory construction" govern the retroactivity question in the absence of a plain legislative statement on the issue. *Id*. at 1003 (internal quotation marks omitted). The court stated that there was "no inequity" in applying the shorter limitations period in *St. Louis* because the plaintiff had specific notice of the shortened limitations period. *Id*. at 1004. Though the time was decreased, the plaintiff was given "reasonable time within which to pursue his claim in court." *Id*. The court held that the plaintiff must be given a reasonable time to pursue his claim in the face of a new, shorter limitations period so that the plaintiff's substantive right is not extinguished by an intervening procedural rule. *Id*. at 1004-05 (citing *Wilson v. Iseminger*, 185 U.S. 55, 62-63 (1902)).

This case is no different than the *St. Louis* case in this regard. Here, the Plaintiff had a cause of action subject to a given limitations period which was significantly reduced by a statute passed in the interim before the lawsuit was filed. As this fact was explicitly mentioned in the notice posted in the Federal Register, the Plaintiff was on notice of the shorter period. 71 Fed. Reg. 43,274 (July 31, 2006). The limitations period began to run on July 31, 2006, the date the FONSI was published, and it expired on January 29, 2007. This gave the Plaintiff from August 5, 2005 until January 29, 2007 to file this lawsuit, six months of which it proceeded with at least constructive knowledge of the shorter period. *Slater*, 173 F.3d at 1037 (stating that the issuance of a FONSI is a final agency action under the APA because it represents the culmination of the agency's environmental investigation). Instead of filing suit expeditiously, the Plaintiff waited until December of 2007 to file its Complaint.

Under Fifth Circuit precedent, Section 139(l) lacks any "genuinely retroactive effect." *St. Louis*, 65 F.3d 43. It merely addresses the Plaintiff's filing of the Complaint rather than adjusting any rights or duties of the parties. Additionally, there is no inequity in its application in this case because the Plaintiff was on notice of the shorter limitations period and, vitally, was given more than a reasonable amount of time after the passage of the statute within which to file its lawsuit. *Flores*, 135 F.3d at 1004. The court is of the opinion that Section 139(l) applies and that the Plaintiff filed its Complaint untimely. Therefore, unless the October 2007 reevaluation revived the Plaintiff's claims, they must be dismissed with prejudice.

B.     *The October 2007 Reevaluation*

The Plaintiff argues that, even if Section 139(l) applies to its cause of action, the agencies' second look at the environmental concerns posed by FM 2499 reopens those issues to litigation.

Two arguments are advanced: the reevaluation fails to adequately consider the effects of Mobile Source Air Toxics ("MSATs"), and the reevaluation incorporates additional Section 4(f) land, making a second formal environmental inquiry necessary. The Defendants argue first that the Plaintiff has not stated a claim with regard to the reevaluation. The Defendants also argue that the reevaluation is akin to an internal memorandum that does nothing more than finalize certain features of the project called for in the 2005 FONSI.

The court addresses the Plaintiff's MSATs argument first. In the EA, the FHWA failed to consider the effects of MSATs on nearby citizens. The reevaluation does address concerns regarding MSATs to be introduced into the area by the construction project. The administrative record reveals that the existence and dangerous nature of MSATs are not newly discovered phenomena. Page 18 of the reevaluation discloses that the Environmental Protection Agency has issued regulations regarding MSATs for some time prior to the 2005 EA. (Admin. R. 5350.) It is not as if the concept of the MSAT was identified in the time between the adoption of the EA and the submission of the reevaluation. Therefore, the Plaintiff should have attacked the FHWA's lack of consideration of the MSAT issue when the FHWA did not include specific findings regarding MSATs in the EA. As discussed above, the Plaintiff's time to attack the adequacy of the FONSI has lapsed. Its argument with regard to MSATs is an attempted end run around the statute of limitations, and it does not provide a basis for reopening the issues created by the proposed construction.

23 C.F.R. § 771.129(c) provides:

> After approval of the EIS, FONSI, or CE designation, the applicant shall consult with the Administration prior to requesting any major approvals or grants to establish whether or not the approved environmental document or CE designation remains valid for the requested Administration action. These consultations will be documented when determined necessary by the Administration.

23 C.F.R. § 771.129(c) (2008).  It appears that this provision is the authority under which the Defendants submitted the reevaluation.  Section 771.129 is one of many regulations expressing the ongoing obligation of the relevant agencies to supplement and revise prior environmental judgments in the face of new information.  *See also* 40 C.F.R. § 1502.9(c) (2008); *Marsh*, 490 U.S. at 372-73.

Although new information justifies the reassessment of previous conclusions, not every datum can possibly justify the reopening of prior valid agency judgments.  In this regard, the Supreme Court has stated that "requir[ing] otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Id*. at 373.  Thus, on one end of the spectrum is the type of new information that requires fundamental changes to existing plans, and on the other end are minor discoveries not worthy of consideration.  The former requires supplementation, while the latter does not.  *See Marsh*, 490 U.S. at 373-74; *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 190 (4th Cir. 1999) (requiring supplementation where new circumstances "present[] a *seriously different* picture of the environmental impact"); *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997) (quoting *Marsh*); *Price Road Neighborhood Ass'n v. U.S. Dep't of Transp.*, 113 F.3d 1505, 1509 (requiring supplementation "only if a project change meets a certain threshold standard"); 23 C.F.R. § 771.130 (2008).

The reevaluation was formulated because events subsequent to the FONSI mandated further analysis of the environmental impacts of FM 2499. (Admin. R. 5336.)  Specifically, the project was tailored to include several new rights of way and drainage and equestrian trail easements that required the use of an additional 5.7 acres of Section 4(e) land. (Admin. R. 5341.)  The updates to

the road design were made as the project progressed towards completion. Much of the additional land was brought into the scope of the project as part of the "Compensatory Mitigation Plan" entered into between the United States Army Corps of Engineers ("the Corps") and several local cities and described in the FONSI. (*Id.* at 5338.)

The EA explores the impact to Section 4(f) land and states that, where plans to minimize impacts fail to eliminate those impacts, the designers will engage in "compensatory mitigation." (*Id.* at 4897.) As a part of the Compensatory Mitigation Plan, the Corps agreed to provide the town of Copper Canyon with equestrian trails adjacent to a portion of the roadway. (*Id.*) The EA goes on to state that the particulars of the final design would be reached as the project neared completion and provides proposed design schematics for the construction of the equestrian trails. (*Id.* at 5157-62.)

On the one hand, the reevaluation clearly calls for the incorporation of additional Section 4(f) land that would seem to implicate the regulations accompanying Section 303(c). If that were the case, it is quite possible that the reevaluation would provide the Plaintiff with a "final agency action" on which to base a lawsuit challenging the adequacy of the agency investigation. On the other hand, the reevaluation merely firms up and finalizes certain design elements in the face of limited additional information. On this basis, and mindful of the distinction made in the courts between minor alterations and wholesale modifications to essential project features, the court finds that this reevaluation serves as neither an independent basis for filing a lawsuit nor as a basis for reopening prior agency decisions.

This result is suggested by and consistent with 23 U.S.C. § 139(l)(2). That section provides for a separate limitations period regarding a supplemental EIS when such action is required. The regulations require a supplemental EIS when "[c]hanges to the proposed action would result in

significant environmental impacts that were not evaluated in the EIS" or "[n]ew information or circumstances relevant to environmental concerns and bearings on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS." 23 C.F.R. § 771.130(a) (2008). The reevaluation identified changes of no such significance, and, thus, the FHWA was not required to issue a supplemental EIS. Thus, where, as here, the reevaluation makes minor changes pursuant to design elements specifically called for in the FONSI, a plaintiff's reliance on such a document as the basis for filing suit is inappropriate. Otherwise, the decisionmaking process would be "intractable," *Marsh*, 490 U.S. at 373, and public facilities would rarely get off the drawing board because efforts "in reliance on the validity of" *any* intermediate agency decision would never be made. *Jersey Heights*, 174 F.3d at 188.

The changes made to the FM 2499 design challenged by the Plaintiff were merely concrete steps taken to effectuate aspects of the project that were publicly debated leading up to the issuance of the EA. Therefore, the reevaluation does not provide the Plaintiff with a platform on which to base its lawsuit, and it does not give the court occasion to assess the issues which are otherwise barred by limitations.

The Plaintiff makes an additional argument as to why the reevaluation gives rise to a cause of action, arguing that the former version[1] of 23 C.F.R.§ 771.135(m) requires the generation of another formal Section 4(f) statement. That section provided for the circulation of a separate section 4(f) evaluation when a "proposed modification of the alignment or design would require the use of section 4(f) property after the...FONSI...has been processed." 23 C.F.R. § 771.135(m)(1) (2005)

---

[1] Section 771.135 was repealed in March of 2008, after all of the briefing on the Motion had been submitted. The regulations accompanying Section 4(f) now appear at 23 C.F.R. §§ 774.1-.17.

(repealed effective April 11, 2008 in 73 Fed. Reg. 13,395 (Mar. 12, 2008) and recodified without relevant substantive change at 23 C.F.R. § 774.9(c) (2008)). That regulation is aimed at the circumstance where a project is approved in a way that does not implicate the use of Section 4(f) land and is then amended in some way that does require such use. Thus, an agency is prevented from creatively avoiding its Section 4(f) duties while ultimately incorporating Section 4(f) land in a federally-funded project.. The FM 2499 project, on the other hand, contained a Section 4(f) statement evaluating the use of that land and specifying measures taken to mitigate consequences to it. Thus, Section 771.135(m) is inapposite. The Plaintiff could have challenged the adequacy of the Section 4(f) analysis in the EA, but its time to do so has passed.

## V. CONCLUSION

Based on the foregoing, the court finds that the APA does not provide the Plaintiff with a right of action against the state defendants. Accordingly, the court is of the opinion that the Texas Department of Transportation, and Ric Williamson, in his official capacity, should be, and hereby are, DISMISSED from this lawsuit.

In addition, the court finds that the Plaintiff's claims are barred by the applicable statute of limitations. Because this lawsuit is based on a Congressional waiver of sovereign immunity, this court's finding that the statute of limitations bars the Plaintiff's claims compels the conclusion that the court lacks subject matter jurisdiction. Accordingly, the court is of the opinion that the Defendants' Motion to Dismiss should be, and hereby is, GRANTED. This case is DISMISSED with prejudice. Any motions that remain pending should be, and hereby are, DENIED AS MOOT.

IT IS SO ORDERED.

**SIGNED this the 13th day of June, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE